## GADDIS *v.* STATE OF INDIANA.

[No. 1267 S 156. Filed October 29, 1969. No petition for rehearing filed.]

*William C. Erbecker,* Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Rex P. Killian,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant was charged with the crime of robbery to which he pled not guilty. Trial by the court resulted in a verdict of guilty and this appeal followed.

A brief recital of the evidence most favorable to the state follows: Eddie Lee Stacey was the station attendant on duty at a Texaco Service Station located at 4555 North Keystone Avenue, Indianapolis, Indiana, in the early morning hours of January 3, 1966. Business being slack, Stacey was sitting in his automobile which was parked in the bay area of the station when he observed a man entering the service station office. Stacey proceeded to the office to see if he could be of assistance. As he entered the office, the man, later identified by Stacey as appellant, pulled a gun and told Stacey to get the key to the restroom. According to Stacey's testimony, appellant then ordered him into the restroom and tied him up with a nylon stocking. Appellant then asked Stacey where the money was and appellant threatened to kill Stacey if he later identified appellant.

Shortly thereafter, Stacey broke loose and upon hearing scuffling inside the station, ran across the street to an old folks home to call the police. Before entering the home he saw what he described as a 1960 Ford utility truck sitting in back. At the same time he saw someone drive off with his own car. The

evidence indicates that someone else drove off in the truck at about the time Stacey emerged from the home, Stacey having completed his call to the police.

Appellant was stopped by police approximately one half hour after they received the report, some four to five miles from the scene of the crime in a 1962 red Dodge pickup truck. He was taken directly to the service station and identified by Stacey as being the person who had previously tied him up and asked where the money was.

Appellant's sole assignment of error in this appeal is that the trial court erred in overruling his motion for new trial. In such motion for new trial appellant contends that the trial court's finding is contrary to law and not sustained by sufficient evidence. In an amended motion for new trial, filed with the permission of the trial court, appellant also contends that there is newly discovered evidence which could not have been presented at trial despite reasonable diligence. Attached thereto are two supporting affidavits.

The thrust of appellant's argument, as it relates to the sufficiency of the evidence question, is that the evidence obtained from the state's witness for identification purposes failed to meet the quantum of proof necessary in a criminal case and was the product of sustained pressure and coercion on the part of law enforcement officials who went out of their way to convict appellant.

When the sufficiency of the evidence is challenged on a criminal conviction, it is well settled that only that evidence most favorable to the state and all logical and reasonable inferences to be drawn therefrom will be considered on appeal. *Carter* v. *State* (1968), 250 Ind. 50, 234 N. E. 2d 850. *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794. *Beatty* v. *State* (1963), 244 Ind. 598, 194 N. E. 2d 727. Moreover, this court will not weigh the evidence or determine the credibility of the witnesses. *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

The above statements of law serve to establish the ground rules upon which this court may review a criminal conviction. However, within this judicial framework is left an area of responsibility from which this court cannot conscientiously close its eyes. Although this court must be careful not to confuse its function and purpose with that of the trial court, we nevertheless should be equally as careful not to be found in derogation of our duties as an appellate tribunal, monitoring with a watchful eye the administration of justice on the trial court level.

Judge Emmert very ably defined the tests to be used when determining the sufficiency of the evidence question in *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641, where he carefully documents each proposition of law with numerous citations to previously decided Indiana cases. We shall not attempt to duplicate that effort in this opinion. In re-affirming the tenure of that opinion however, we would again note the basic premise from which this court begins its inquiry, namely that a defendant is presumed innocent until proven guilty. From that point on, in determining whether each material allegation of the offense is supported by substantial evidence of probative value we are guided by the following caveats:

(1) To prove an essential allegation beyond a reasonable doubt requires more evidence than to prove an allegation by a preponderance of the evidence.

(2) When there is a reasonable doubt whether defendant's guilt is satisfactorily shown, he must be acquitted.

(3) *Substantial* evidence means more than *seeming* or *imaginary*.

(4) The scintilla of evidence rule does not obtain in this jurisdiction.

(5) Mere suspicion of guilt or opportunity to commit the crime are insufficient to support a conviction.

*Baker* v. *State, supra,* and cases there cited.

The essence of the above as it relates to the quantum of proof required to convict a person of a criminal offense is very aptly summed up as follows:

"The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. *Chambers* v. *State* (1953), 232 Ind. 349, 356, 111 N. E. 2d 816; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528; *Bradley* v. *State* (1870), 31 Ind. 492." *Baker* v. *State, supra,* p. 644, 645.

Mindful of the above, this court must make its determination on the record of the evidence submitted in each particular case. As we said most recently in *Liston* v. *State* (1969), 252 Ind. 502, 250 N.E. 2d 739, a recognition of our appellate responsibilities in this regard may require a probing and sifting of the evidence to determine whether the residue of facts warrants a conviction; where such residue fails to meet the requirement that each material allegation be supported by substantial evidence of probative value, we should so declare.

Turning to the facts in this case we note that Stacey, the chief prosecuting witness, identified appellant in the presence of policemen at the scene of the crime approximately one hour after the alleged crime had occurred. We look with some skepticism however, at the testimony illicited from this witness at trial:

"Q. And they brought back a man, did they?
A. Yes, sir, they did.
Q. And was he the man that you had seen that had held you up?
A. He looked like the man, sir.
Q. Would you say that he was the man?
A. Well, I was too shook up and rattled that night, I couldn't tell you for sure if it was or not. At the time I identified the man, yes."

And . . .

"Q. Weren't you also threatened with prison if you didn't testify against Gaddis?

A. Yes, I was.

Q. And they told you you would go to the penitentiary if you didn't testify against Gaddis, didn't they?

A. Right."

And . . .

"Q. Now, then were you absolutely sure in your identification when you first saw Gaddis in the custody of the police? Were you sure of it then?

A. I was positive and I'm positive today.

Q. You're positive today. You are more positive than you were this morning, is that right?

A. I'm just as positive as I was this morning.

Q. You got more assurances since this morning, haven't you?

A. Yes, I have.

Q. And the reason you are so positive now is you've got assurances that you won't go to prison, yourself, is that right?

A. Right.

Q. Did, were you told that the authorities would see that there would be such a high bail put on Gaddis, if he was convicted, that he couldn't get out?

A. Yes, I was."

Finally . . .

"Q. Now, weren't you strongly advised after your testimony this morning that you would better be more positive of your identification? Weren't you told that?

A. Not that I can remember, no, sir.

Q. You say no. Now, when the, you testified this morning that you told police that Gaddis looked like the man that robbed you. You testified to that didn't you?

A. Yes, sir, I did.

Q. So you weren't sure then, were you?

A. No, sir.

Q. I see. Well you just got through saying you were positive then, didn't you?

A. Yes, sir, I did.

Q. Well, which is it then, which is right, he looked like the man or you were positive? Which is which?

A. I'm positive.

Q. But you weren't at the time the police brought him up, were you?

A. No, sir, I was scared."

Coupled with the above testimony is other evidence that the prosecuting witness was subjected to pressures and threats of prison if he *didn't* testify against appellant. On the other hand there was evidence that appellant made threats against the prosecuting witness if he *did* testify. Whether these facts affected his testimony is not for us to decide. What is apparent, however, is that his testimony is vacillating, contradictory and uncertain.

In addition, we note a complete lack of circumstantial evidence by which appellant could be connected with the crime. For example, there is no evidence that any of the money was recovered on appellant or in his truck, yet he was apprehended approximately one-half hour after the robbery. The description given by the prosecuting witness of the truck he saw outside the service station was that of a utility truck. Appellant was apprehended while driving a pick-up truck. Also there was testimony to the effect that two vehicles left the service station at the time of the robbery, one being the utility truck and one being Stacey's car. The car apparently was recovered but there is no evidence whatsoever as to who the driver was. Whether the identity of this driver has ever been ascertained remains a mystery. Presumably the state considers it a foregone conclusion that the robber was driving the truck instead of the car. Should we be inclined to concede such an assumption, the difference between the two truck descriptions remains unreconciled. Further, the evidence relating to what the robber was wearing at the time, as testified to by Stacey, conflicted with appellant's testimony in that regard, yet the state failed to clarify this conflicitng evidence with testimony of others who would have known what appellant was wearing, namely the police officers who made the arrest. Finally, appellant offered an alibi as to his whereabouts immediately prior

to his arrest. There is no evidence, other than the testimony of Stacey which refutes this alibi.

To summarize, the state offered the testimony of Stacey to substantiate the fact that appellant committed the crime. That testimony, as pointed out above, is at best equivocal and the result of coercion. In addition thereto is a *complete lack* of circumstantial evidence in support of appellant's guilt. We feel compelled to give weight to this fact since it goes to the very accuracy of Stacey's identification. Where the state's chief prosecuting witness, by his own admission is unsure as to the identity of the criminal, and where other evidence *or lack thereof* would support such uncertainty, this court would hold that such identification, as a matter of law, is insufficient evidence, by itself, to prove appellant to be the perpetrator of the crime.

> "While the identification and whereabouts of defendant at the time the crime was committed are questions for the jury yet where from the entire record there is reasonable doubt of the guilt of defendant a judgment of conviction cannot be permitted to stand." *People* v. *Gold* (1935), 361 Ill. 23, 32, 196 N. E. 729, 732, quoted with approval in *Baker* v. *State, supra,* p. 648.

This court must be particularly vigilant where a conviction is supported by the testimony of one eye witness. Testimonial errors resulting from imperfect recollection, defective perception or suggestion have been shown to occur and we would be careful not to implement a miscarriage of justice in such a situation where that testimony is the *only* testimony of appellant's guilt. Where the evidence merely tends to support a conclusion of guilt it is not enough; it must support such a conclusion beyond a reasonable doubt. *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874. To hold otherwise would violate the presumption of innocence until guilt is proven.

We recognize that it is the jury's function, not ours, to weigh the evidence, whether conflicting or uncontradicted,

from which discordant, yet reasonable inferences may be drawn and then determine whether such evidence excludes every reasonable hypothesis of innocence. *Manlove* v. *State, supra. Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445. *White* v. *State* (1948), 226 Ind. 309, 79 N. E. 2d 771. *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223. *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822. On review, however, we must pass on its sufficiency as a matter of law.

> ". . . it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence; and in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether is was substantial in the sense above explained. In no other way can the rights of the defendant be protected. It would be an incongruous situation if the court were compelled to let a conviction stand as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, when for any reason *made manifest on the record* the court is convinced the evidence reasonably could not support a conviction." (our emphasis) *State* v. *Gregory* (1936), 339 Mo. 133, 143, 96 S. W. 2d 47, 52 quoted with approval in *Baker* v. *State, supra,* p. 645.

In the case at bar, the evidence and any reasonable inferences to be drawn therefrom was insufficient to conclusively prove appellant's guilt beyond a reasonable doubt. Having thus decided that the conviction must be reversed and a new trial granted because of insufficiency of the evidence, we need not discuss appellant's contention that the decision is contrary to law and that there is newly discovered evidence which would warrant a new trial.

In summation, the evidence of guilt, in the matter before us, containing as it does the ingredients of uncredible dubiosity, falls far short of proof beyond a reasonable doubt. If such rule is ever to be revived by this court, certainly the facts, as set forth in the record revealing the suspect character of the

state's proof make it incumbent upon this court to apply it here.

From our foregoing discussion as to the sufficiency of the evidence, we would reverse appellant's conviction and order a new trial.

Judgment reversed.

DeBruler, C.J., and Jackson, J., Concur. Givan, J., Dissents With Opinion in Which Arterburn, J., Concurs.

## DISSENTING OPINION

GIVAN, J.—I respectfully dissent from the majority opinion in this case. The majority opinion sets out ample authority for the proposition that this Court will not weigh the evidence on an appeal. I do not think the evidence in this case comes within the rule set out in other cases cited by the majority opinion to the effect that this Court will reverse if there is a total lack of evidence upon which a jury could base a conclusion of guilt.

Evidence in the case discloses that the defendant threatened the prosecuting witness before the trial by saying, "If you identify me, I am going to get out on bond and I am going to kill you." Similar threats were repeated by the defendant to the prosecuting witness at the trial during a recess. The majority opinion refers to testimony by the prosecuting witness that he was fearful of being sent to prison, if he did not testify for the state. It appears the jury might well have believed that the hesitant nature of the witness' testimony might well have been motivated by the threats from the defendant rather than any fear of imprisonment by the state. Despite this, the prosecuting witness testified, "I have never been doubtful that he was the one that robbed me." In addition to this, the evidence discloses that the defendant was arrested by the police officer the same night of the alleged offense wholly upon a description furnished him by the prose-

cuting witness, both as to his physical appearance and the truck in which he was arrested.

The majority opinion places what I consider to be undue weight upon the fact that the prosecuting witness had stated to the police officers that he thought that the truck was a Ford truck, when in fact it turned out to be a Dodge truck. Further that the prosecuting witness referred to the truck at times as a pickup and at other times as a utility truck. An examination of his testimony reveals that he was speaking of the same basic truck design and that his reason for referring to the truck as a utility truck was that it was a pickup truck with compartments with "little doors" on the side. It nevertheless was sufficiently described that the officer was able to make the arrest based upon the description. There is ample evidence from which the jury could find that the prosecuting witness had ample opportunity in a face to face encounter in a lighted room with the defendant to make an adequate identification and that in spite of his demeanor and statements on the witness stand his testimony as to identity was factual.

I would, therefore, follow the cases cited in the majority opinion in holding that this Court will not weigh the evidence on appeal.

Arterburn, J., concurs.

NOTE.—Reported in 251 N. E. 2d 658.