**Clifford HOLDERFIELD, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–9006–CR–389.**

Supreme Court of Indiana.

Sept. 30, 1991.

Rehearing Denied Nov. 21, 1991.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Ian A.T. McLean, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony, and Confinement, a Class B felony. He was sentenced to forty (40) years for the rape, enhanced by thirty (30) years by reason of his status as a habitual offender, and fifteen (15) years for confinement, to run consecutively to the rape sentence.

The facts are: M.S.J., the victim in this case, was employed by a Village Pantry store in Indianapolis. Near midnight on March 21, 1989, she was cleaning up the store in preparation for ending her shift. Her relief employee had arrived and was preparing to begin her shift. M.S.J. was in the process of taking empty bottles to a storage shed behind the building. As she left the store to go to the shed, she noticed the time was 12:31 a.m. As she approached the shed, she was aware that someone was walking behind her. That person, later identified as appellant, walked on down the street. M.S.J. returned to the shed with the second load of bottles, and as she was backing through the shed door, appellant suddenly put his arm around her, and she saw that he was holding a "big

knife." He shoved her back into the shed, stating "Get back in there."

She testified that she screamed and tried to resist by placing her hands and feet against the doorway. However, appellant told her to "shut up" and forced her back into the shed. She testified she recognized him at the time as the same person who had been behind her earlier. She testified that one of the features she noticed about her assailant was that one of his eyes was "not straight." She stated that they stood under the ceiling light "for a long time, it seemed like forever."

Appellant asked the victim if there was anyone else in the store and she told him there was another employee there, to which appellant replied, "You're not going to tell on me, are you? If you tell on me, I know where you live and I'll come to your house and kill you." Appellant threw the victim's jacket on the floor, then unfastened her clothing and told her to take down her pants and underwear. He then lowered his own pants and tried but was unsuccessful in penetrating her. He shoved her to her knees, forced her to perform fellatio, then raped her.

Both appellant and the victim heard her co-worker outside the shed. The co-worker asked if the victim was all right. Since she still was trapped in the shed with appellant holding his knife, she told her co-worker that nothing was wrong. However, she shortly observed an opportunity to get out the door, which she did. The two women then ran to the front door of the store, entered, and locked the door behind them. The police were called and the victim was taken to Community Hospital where swabs of her mouth and vaginal area revealed the presence of seminal fluid. After viewing photographic arrays which did not include a picture of appellant, the victim was shown a photographic array which did include a picture of appellant, and she immediately identified him as her attacker.

Appellant claims the trial court erred by permitting the introduction of State's Exhibits Nos. 9 and 10, which were notices of alibi filed by appellant prior to trial. On January 20, 1989, appellant filed a notice of alibi stating he was with a "Kathleen Coffman, address unknown at this time" during the period of the commission of the crime. On September 12, appellant filed an alibi notice in which he stated he was with "Kimberly Dennis" during the confinement and rape. One month later, appellant was represented by new counsel and filed a third alibi notice repeating his statement that he was with "Kathleen Coffman" during the period in question.

During the trial appellant presented his alibi defense of the testimony of Kimberly Dennis only and totally ignored his notices of alibi claiming he had been with Kathleen Coffman. As rebuttal testimony following the presentation of appellant's defense, the State offered in evidence both alibi notices. Appellant claims this interfered with his right to avoid self-incrimination and was an impermissible act of the State calling attention to the fact that he had not testified. We can see no merit to either of appellant's claims.

This Court has held that an alibi notice is a statement of fact by the defendant which, although neither verified nor signed by him, is "nonetheless his statement." *Randall v. State* (1983), Ind., 455 N.E.2d 916; *see also Mengon v. State* (1987), Ind., 505 N.E.2d 788.

Appellant attempts to distinguish *Randall* and *Mengon* in that those cases involve situations where the defendant had taken the witness stand and testified and his alibi statements had been used to impeach him. It is true that when a defendant makes a pretrial statement and foregoes testifying, his pretrial statement is hearsay. *Washburn v. State* (1986), Ind., 499 N.E.2d 264. However, in *Washburn,* the statement was being introduced for the truth of its content as primary evidence by the State. In the case at bar, appellant's alibi statements were not being introduced for the truth of their content. The State of course had no interest in trying to prove the truth of appellant's alibi.

Appellant had introduced the testimony of Kimberly Dennis. She had testified that she knew appellant and his family; that he had helped her from time to time in the

store where she worked; that her store was near the store where the rape occurred; and that Sandra Phillips, who worked where the rape occurred, called her shortly thereafter, warned her to be careful and gave her a description of the rapist. However, Sandra Phillips testified that she had not called any other Village Pantry store and that she had no information concerning the rapist's description. Her only call had been to the police.

Dennis had testified that she had been with appellant during the entire time of the alleged crime and that Kathleen Coffman, the person mentioned in appellant's other alibi notice, was not present at any time during that period. In view of this testimony presented by appellant in his defense, it was proper for the State to present both of appellant's alibi notices to show their contradictory nature and to attack the credibility of Dennis' testimony.

If appellant felt that he had erred in giving the alibi statement with regard to Kathleen Coffman, he certainly could have informed the State and the court that he had erred in filing that alibi notice and requested that it be withdrawn. Many years ago this Court, in *Behler v. State* (1887), 112 Ind. 140, 13 N.E. 272, in discussing the admissibility of a sworn statement made by the defendant prior to trial, stated:

"It is no doubt true that an accused may show that he was mistaken as to some or all of the statements contained in his affidavit; and so, too, he has a right to explain them if he can by competent evidence, but the statements are nevertheless admissions, and, as such, entitled to go to the jury." *Id.* at 141, 13 N.E. at 272.

We hold the same is true with regard to alibi notices which later may be discovered to be in error.

Appellant's claim that the State's introduction of the alibi notices forced him either to take the stand or to remain silent and suffer damage is unpersuasive.

The Supreme Court in the case of *Williams v. Florida* (1970), 399 U.S. 78, 84,

90 S.Ct. 1893, 1897, 26 L.Ed.2d 446, 451, stated:

"That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant."

In the case at bar, appellant's Fifth Amendment rights were not violated by the presentation of his alibi notices which tended to rebut the testimony of his alibi witness.

Appellant claims there is insufficient evidence to support his conviction of rape and confinement. Appellant concedes that this Court will not weigh the evidence submitted to the trial court, citing *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658, but nevertheless claims that in his case the evidence against him was incredible and insufficient to support the verdict. However, as recited above, we hold the evidence is ample to support the jury's verdict. Appellant's further contention that the State wholly failed to rebut his alibi testimony fails. The jury was not bound to believe appellant's alibi evidence.

Appellant contends there is insufficient evidence to support the habitual offender finding. This claim is based upon his premise that there was no evidence to support the instant conviction and therefore, nothing upon which to assess the enhanced penalty for the habitual offender status. We find no merit in this claim.

■ Appellant claims his conviction of both rape and criminal confinement is unconstitutional because the confinement was an integral part of the rape. The facts in this case clearly show that appellant accosted his victim outside the storage shed, forced her to return inside the shed where he confined her, and then embarked upon the rape. It is clear that there is evidence to support the jury's verdict that two separate crimes occurred. *See Linder v. State*

(1985), Ind., 485 N.E.2d 73. This Court has held that under facts similar to those in the case at bar, a defendant may be sentenced for both confinement and a crime against the person. *See Forrester v. State* (1982), Ind., 440 N.E.2d 475 and *Daniels v. State* (1980), 274 Ind. 29, 408 N.E.2d 1244.

Appellant claims the trial judge erred by imposing consecutive sentences under the facts of this case. In pronouncing sentence upon appellant, the trial judge found that although the manner in which appellant had been reared constituted mitigating circumstances, she found that the aggravating circumstances outweighed the mitigators, and the evidence showed that appellant constituted a danger to society whose protection demanded a greater sentence. The evidence in this case supports the judge's finding of aggravating circumstances.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., dissents with separate opinion in which KRAHULIK, J., concurs.

DeBRULER, Justice, dissenting.

Without hubris, I dissent. In the cases which have considered the evidentiary value of the defendant's notices of alibi, the Court has concluded that they are prior statements of the defendant, and are to be treated as such. This Court has authorized their use as evidence by the prosecution upon a proper foundation to impeach the defendant's own trial testimony. *Mengon v. State* (1987), Ind., 505 N.E.2d 788. *Randall v. State* (1983), Ind., 455 N.E.2d 916. This Court has not authorized their use as evidence by the prosecution for other purposes, and I would not do so.

The majority concludes that the defendant's prior statements within his formal notices of alibi, are admissible to rebut the testimony of his alibi witnesses. I disagree. Such use does not square with the fifth amendment. In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court held that alibi notices are legally obtained by the prosecu-tion. However the Court was quick to point out that such notices had not been used as evidence against the defendant in that case. The case does not approve the direct use of such notices as rebuttal evidence.

The purpose of our alibi statute is to prevent the prosecution from being taken by a surprise defense. This purpose can be fully served without according the alibi notice evidentiary value, apart from its use as a prior inconsistent statement to impeach the defendant's own alibi testimony. In fact, because it is a pleading serving a notice function and is partly the work of the defendant and partly the work of the defense counsel, it has very little direct evidentiary value, while carrying a significant propensity to confound and confuse the jury. That propensity looms large here, as the conflict between the notices provides the basis for a jury inference that the defendant is a liar and cheat and probably guilty.

KRAHULIK, J., concurs.