**Brent A. SMITH, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–9403–CR–274.

Supreme Court of Indiana.

Aug. 18, 1994.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A bench trial resulted in the conviction of appellant of Murder, for which he received an enhanced sentence of sixty (60) years; Conspiracy to Commit Murder, for which he received an enhanced sentence of fifty (50) years; and Carrying a Handgun Without a License, for which he received a sentence of one (1) year, all sentences to run concurrently.

The facts are: David Long, Brent Smith, Delfonzo Hall, and Craig Maxwell resided together in an apartment in Franklin, Indiana. In May of 1992, Long concocted a plan to sell cocaine. Smith, Hall, and Maxwell agreed to participate in the scheme. A short time after embarking on this enterprise, Long, Smith, and Hall decided they wanted to "get rid of Maxwell."

Hall suggested that they shoot Maxwell. Smith stated that he wanted to be the one to "pull the trigger." He said he disliked Maxwell and "couldn't stand him." On or about May 18, 1992, Catherine Henderson was visiting in the men's apartment when she was insulted by Maxwell. She asked Smith to kick Maxwell; however, Smith laughed and said, "he's going six feet under."

On May 19, Long, Smith and Hall had a discussion as to how they would dispose of

Maxwell's body after they shot him. Although they could not come to an agreement as to what to do with the body, they decided to kill Maxwell that night. On that same day, Smith, who was studying crime in a sociology class, when asked to give an example of a primary deviance which he might have committed in the past week, responded, "I plan to kill a man."

At approximately 2:30 a.m. on May 20, Long, Smith, and Hall told Maxwell they were going on a drug run in Indianapolis. At approximately 2:30 a.m., the four of them drove to Douglas Park in Indianapolis. Smith was carrying a .38 caliber revolver. Upon arrival at the park, Smith and Maxwell exited the vehicle and walked into the dense fog. Long and Hall then heard four gunshots. Smith, who was holding the .38 caliber revolver in his hand, returned to the vehicle alone and said, "Let's get going, let's get out of here."

On the way back to their apartment, Smith stated that he shot Maxwell one time, that Maxwell ran and fell down, and that he then shot Maxwell three times in his head. They decided to throw away Maxwell's personal belongings. They hid the gun in a barn and threw Maxwell's clothing into a trash bin. In the meantime, Indianapolis Officer Noreen Cooper had discovered Maxwell's body in the park. An autopsy showed that Maxwell had been shot four times and that any one of the wounds could have been fatal.

At approximately 1:30 a.m. on May 21, investigation had led police to the men's apartment. Long, Smith, and Hall then went to the police department for questioning. Long first gave a statement, after which, Hall gave a statement which conflicted with Long's statement. Long then gave a second statement admitting his involvement in Maxwell's death. Subsequently Smith waived his *Miranda* rights and gave a statement which included two versions of the events.

In the first version, Smith stated that he disliked Maxwell because he was a pest, that Maxwell borrowed his clothes without his permission, and that someone in a white car picked up Maxwell. When informed that Long and Hall had already given statements, Smith stated that Long had been attempting to set up a cocaine business, that Hall, Long, and Smith believed Maxwell was a "threat," that on May 19, 1992 they agreed to kill Maxwell, that they told Maxwell they were going to Indianapolis for a dope deal, that Smith carried a .38 caliber pistol, that Long accompanied by Smith, Hall, and Maxwell drove to Douglas Park on a foggy night, and that he and Maxwell exited the car.

The interview then was terminated when Smith stated, "You know what happened, I'll tell you but I want a lawyer there." Police officers than obtained a search warrant based on information received from Long. Upon the executing of the warrant, the officers found the .38 caliber revolver in the location described by Long.

■ Appellant claims there was insufficient evidence of probative value to sustain his conviction. He concedes that this Court will not reweigh evidence on appeal and will sustain the trial court if there is sufficient evidence to support the court's findings. *Miller v. State* (1990), Ind., 563 N.E.2d 578. Nevertheless, he maintains that the only evidence against him is that furnished by his coconspirators and that since they were testifying in cooperation with a plea bargain to lessen the sentences against themselves their evidence should be discounted.

Appellant cites *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658, wherein this Court reversed a conviction which had been based on an eyewitnesses identification testimony. However, in that case, the eyewitnesses testimony was equivocal and there was a complete lack of circumstantial evidence against the accused. We do not see that situation in the case at bar.

■ Here, both Long and Hall testified in detail concerning both the conspiracy and the actual carrying out of the execution of the victim. In addition, we have the statement of appellant incriminating himself, which was given to the police after he had received his *Miranda* warnings. We also have the comments made by appellant to others inferring

that he was planning to kill the victim. It is true, as claimed by appellant, that an accomplice's testimony should be highly scrutinized; however, in viewing the accomplice's testimony in such light, it may be accepted and considered sufficient standing alone to support a conviction. *Brown v. State* (1988), Ind., 529 N.E.2d 328; *Kelley v. State* (1984), Ind., 460 N.E.2d 137. All things considered in this case, we cannot say there is insufficient evidence to support the decision of the trial court.

■ Appellant contends the trial court erred in sentencing him to the maximum sentence on each of the charges. He takes the position that there were no sufficient aggravating circumstances to warrant such enhancement. He claims the so-called aggravators used by the trial judge were nothing more than those elements necessary to constitute the crime as charged.

However, in Ind.Code § 35–38–1–7.1, the legislature has listed the various aggravators which may be used, one of which is the nature and circumstances of the crime committed. As pointed out by the trial judge, when the murder of the victim was being planned, appellant volunteered and demanded that he be the one to shoot the victim. The trial judge also lists the nature of the crime as an aggravating factor. The evidence shows the nature of the crime to be that the victim was lured to the scene of the murder on the ruse of a supposed drug deal and that appellant deliberately executed him by firing four shots into his body, any one of which would have been fatal. The judge also listed mitigating factors such as appellant's lack of a criminal record, but she found that the aggravating circumstances outweighed the mitigating circumstances. We cannot say that the trial judge erred in pronouncing sentence upon appellant. *See Ferrell v. State* (1991), Ind., 565 N.E.2d 1070; *Henley v. State* (1988), Ind., 522 N.E.2d 376.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.