**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ELIZABETH A. HOUDEK**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRIS GRINER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-CR-656 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1203-FA-015051

**May 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Chris Griner appeals his conviction for Class A felony child molesting. He contends that there is insufficient evidence to sustain his conviction. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

In 1999, forty-year-old Griner was married to Cynthia Griner. Cynthia had a granddaughter, C.T., who was the adopted daughter of her son. C.T. would visit the Griners' house in Indianapolis regularly. During one of the visits when C.T. was three years old, Griner, who knew that C.T. liked salt, put salt on his penis and had C.T. lick it off. He also took C.T. into a closet and showed her "what cum was" by putting ejaculate in a cup. Tr. p. 14-15. This happened after Cynthia had gone upstairs to bed for the night. C.T. told her mother what had happened, and her parents reported the event to police in Morgan County, where they lived at the time. C.T. was also taken to her family doctor for an examination. No criminal action was taken against Griner at the time, but C.T.'s parents would not let her be alone with Griner after the incident. C.T. and her parents did not discuss the incident again until C.T. was twelve years old and began having nightmares about it. *Id.* at 65-66.

On January 2, 2012, on C.T.'s sixteenth birthday, Griner sent her a text message wishing her a happy birthday. C.T. told her parents, and C.T.'s father told Cynthia, who had recently gotten divorced from Griner. C.T. said that she thought she could persuade Griner to admit to molesting her if she texted him back and that she could get closure if she confronted him. C.T.'s mother discouraged the idea, but C.T. engaged in a text-

2

message conversation with Griner anyway. Griner was reluctant to disclose the details of what happened when C.T. was three years old, but he made several comments about their history, his reasons for doing what he did, and his feelings about intergenerational relationships. State's Ex. 2. When C.T. told her parents about her conversation with Griner, they contacted the police.

The State charged Griner with Class A felony child molesting. A no-contact order was issued as a condition of Griner's pre-trial release. In violation of that order, Griner made eleven phone calls to Cynthia. State's Ex. 3. The State amended the charging information to add eleven counts of Class A misdemeanor invasion of privacy. A bench trial was held, and Griner was found guilty as charged. He was sentenced to thirty years executed for the Class A felony child-molesting conviction, and thirty days suspended to probation on each of the Class A misdemeanor invasion-of-privacy convictions, to run consecutively to each other and to the child-molesting sentence, for an aggregate sentence of 30 years and 330 days.

Griner now appeals his Class A felony child-molesting sentence only.

**Discussion and Decision**

Griner contends that there is insufficient evidence to sustain his Class A felony child-molesting sentence. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom

3

and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Class A felony child molesting is governed by Indiana Code section 35-42-4-3, which provides in relevant part:

> (a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:
>
>> (1) it is committed by a person at least twenty-one (21) years of age;
>> . . . .

Deviate sexual conduct is defined at Indiana Code section 35-31.5-2-94 as "an act involving the sex organ of one (1) person and the mouth or anus of another person." Griner argues that the evidence against him, consisting of the testimony of a sixteen year old from an event when she was three years old, and text messages that did not confirm specific details of the incident, was insufficient to sustain his conviction. We disagree.

In this case, C.T. testified that when she was three years old, Griner put salt on his penis and had C.T. lick it off. He also took C.T. into a closet and showed her "what cum was" by putting ejaculate in a cup. Tr. p. 14-15. A conviction for child molesting may be sustained by the uncorroborated testimony of a single minor victim. *Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012), *trans. denied*. Griner admits this, but he argues that we should reverse the decision of the trial court based on the "incredible dubiosity" rule. Appellant's App. p. 6. Under this rule, a court will impinge on the fact-finder's responsibility to judge the credibility of the witnesses only when it has

4

confronted "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994) (quotation omitted). Application of this rule is limited to cases where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Id.* In such an action, an appellate court may reverse the trial court's decision. *Id.* (citing *Gaddis v. State*, 253 Ind. 73, 251 N.E.2d 658, 663 (1969)).

However, we find that the incredible dubiosity rule does not apply to this case. The incredible dubiosity rule only applies in cases where there is a complete lack of circumstantial evidence, and that was not the case here. C.T.'s parents testified that she told them about the incident shortly after it occurred, Tr. p. 44, 65, C.T. was examined by her doctor after the incident, *id.* at 62-63, and C.T. had nightmares years later about the incident. *Id.* at 65-66. Additionally, the text messages sent between C.T. and Griner provide further circumstantial evidence that the incident occurred. In their conversation, C.T. said, "Yu know wat yu did and it was wrong yu reined my life i could never see how someone could do that to a LITTLE GIRL!" State's Ex 2 (errors in original), and Griner responded:

> I'm glad you think you know right from wrong. But in my heart I love you then and everyday and have a feeling of lost everyday. Some people including yourself will think I did wrong. But I can't do anything about our ages. I disagree with your smoking and I understand you have a boyfriend. What's he doing to the little girl I know?

*Id.* (Errors in original). Griner asked C.T. what she remembered and she said "You melosted me when I was 3 and 11 u put salt on yer dick and made me lick it off yu took

5

me in the laundry room and showed me what cum was . . . ." *Id.* (Errors in original).

C.T. then asked why Griner would do that to her, and he refused to answer via text message. C.T. later said "I hate yu fer wat yu did to me. And why would yu want to do it in person I can't be around yu why cant we talk about wat you did so I can get an answer I want to grow past this so I can move on with my life." *Id.* (Errors in original). Griner responded:

> Again not smart to talk like this. The only comment I will make is everything I did with you was a life lesson. I was taught in the same manner when I was growing up. And just like you I didn't always agree with it. I was put through a lot worse that you were. I can be selfish sometimes but at least there is one other person in this world that might understand what I went through. And that person is you. And i am sorry. I would stay away from me because I would not want to stop. Either foregive me or forget me that is the only way to move on. I hate to be the one to tell you but life is not fair.

*Id.* (Errors in original). This circumstantial evidence prevents the incredible dubiosity rule from applying in this case.

Griner's argument is therefore simply a request for us to reweigh the evidence, which we will not do. As discussed above, the State provided sufficient evidence at trial that Griner engaged in deviate sexual conduct with C.T. when C.T. was under the age of fourteen, Tr. p. 14-15, and Griner was over the age of twenty-one. *Id.* at 70. We therefore affirm Griner's Class A felony child-molesting conviction.

Affirmed.

KIRSCH, J., and PYLE, J., concur.

6