## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 11 2016, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey C. Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | April 11, 2016<br><br>Court of Appeals Case No.<br>02A03-1509-CR-1490<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck Jr., Judge<br><br>Trial Court Cause No.<br>02D04-1501-F5-02 |

**Bradford, Judge.**

## Case Summary

On December 29, 2014, Appellant-Defendant Jeffrey Johnson was charged with Level 5 felony battery, Level 6 felony residential entry, Level 6 felony strangulation, Level 6 felony criminal recklessness, and Class A misdemeanor invasion of privacy. A jury found Johnson guilty of battery and invasion of privacy. The trial court sentenced Johnson to an aggregate term of four years of incarceration. On appeal, Johnson argues that there was insufficient evidence to sustain his battery conviction. Concluding otherwise, we affirm.

## Facts and Procedural History

Johnson began dating Theresa Jerome in June of 2014. (Tr. 107) The two lived in separate units in the same apartment building. (id) The couple had a contentious relationship and, in September 2014, Johnson was convicted of battery against Theresa. (Tr. 132, 186) A no-contact order was issued to keep Johnson away from Theresa; however, the couple continued to see one another romantically. (id 138)

On the morning of December 29, 2014, Johnson and Theresa began arguing. (tr. 109) Theresa dropped Johnson off at work but the argument continued via text messages. (110) At Johnson's request, Theresa picked up Johnson from work and the two returned to Theresa's apartment. (111) Theresa attempted to end the relationship and Johnson returned to his apartment. (id) Approximately an hour later, Johnson returned to Theresa's apartment, forced his way inside, and threatened to kill Theresa. (116-17) Johnson brandished a

silver box cutter and, as Theresa attempted to flee, grabbed her by the hair and slammed her against a wall and a glass side table. (tr. 117, 118)

[4] Theresa again attempted to escape but Johnson forced her to the ground, straddled her chest, and threatened to stab her with the box cutter. (tr. 118-19) After some time, Johnson said "I can't do it," rolled off of Theresa, and laid on the floor. Tr. p. 119. Johnson then crawled over to Theresa, placed his head and the box cutter on her knee, and said, "just kill me." Tr. p. 120. After Theresa told Johnson to leave, and he complied, Theresa called the police. (120, 122) Fort Wayne Police Officers John Nichter and Cameron Norris arrived shortly thereafter to investigate the incident.

[5] The officers testified that Theresa had an abrasion and swelling on the left side of her head, an abrasion on her right ankle, and scratches on her back. (Tr. 159, 162, 172) The officers took photographs of Theresa's injuries which were admitted into evidence at trial. (ex. 13, 14) While Theresa was speaking with the officers, Johnson texted Theresa saying, "please help me" and "I'm done, killing myself." Tr. pp. 123, 161. The officers went to Johnson's apartment to assure that he was safe and to question him. (Tr. 169) Johnson gave the officers permission to search his apartment and, during the search, Officer Norris found a silver box cutter behind a dresser in Johnson's bedroom. (169, 170, ex. 19)

On January 5, 2015, the State charged Johnson with Level 5 felony battery[1], Level 6 felony residential entry, Level 6 felony strangulation, Level 6 felony criminal recklessness, and Class A misdemeanor invasion of privacy. (app. 14) A jury trial was held on July 28, 2015. (tr. 1) The jury found Johnson guilty of battery and invasion of privacy, and not guilty of the remaining charges. (app. 5) The trial court sentenced Johnson to four years for battery and one year for invasion of privacy, to be served concurrently. (App. 6-7)

## Discussion and Decision

Johnson appeals his conviction for Level 5 felony battery, arguing that there was insufficient evidence to sustain his conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The

---

[1] The conviction was enhanced to a Level 5 felony under Indiana Code § 35-42-2-1(f)(4) because Johnson had a previous conviction for battery against Theresa.

> evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[8] Johnson argues that Theresa's testimony was incredibly dubious so as to render it insufficient to support his conviction. "The incredible dubiosity rule allows the Court to impinge upon a jury's responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony. The incredible dubiosity rule is only applied in limited circumstances." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015) (internal citation omitted). "Application of this rule is limited to cases…where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994) (citing *Gaddis v. State*, 253 Ind. 73, 251 N.E.2d 658 (1969)). Convictions should be affirmed unless the testimony is so inherently improbable that no reasonable person could believe it. *Stephenson v. State*, 742 N.E.2d 463, 498 (Ind. 2001).

[9] Johnson argues that Theresa's testimony was inherently contradictory because her initial account of the attack given to Officers Nichter and Norris differed

slightly from her trial testimony describing the attack.[2] Theresa initially told officers that Johnson "shoved her against the wall and then threw her down onto the ground and…she hit her head on a glass table." Appellant's App. p. 7 (citing Tr. p. 158-59). Johnson argues that this conflicts with her trial testimony that he "grabbed the back of my head, and swung me by my hair and slammed me into the wall, the corner, the edge of the wall." Appellant's App. p. 7 (citing Tr. p. 117). Theresa went on to testify, "I don't know if he slammed me into the table, the glass table…or if I fell. I think I was pushed into the table when I was bending over on my head." Tr. p. 118.

[10] The doctrine of incredible dubiosity is inapplicable here for two reasons. First, the content of Theresa's testimony was not inherently contradictory or improbable, quite the opposite, in fact. Theresa's trial testimony describing the attack was nearly identical to her initial description to police. The alleged inconsistencies raised by Johnson focus on the exact manner in which he attacked Theresa from behind as she attempted to flee. Such inconsistencies, if they can even be called that, are negligible. It is reasonable to assume that there would be some minor, insubstantial inconsistencies when any witness is recounting events from seven months prior, especially traumatic events such as

---

[2] Johnson acknowledges that the incredible dubiosity rule only applies to conflicts within trial testimony and not conflicts between trial testimony and previous out-of-court statements. *Buckner v. State*, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006). However, he argues that Theresa testified that her account of the attack given to police was completely accurate and, therefore, there is inconsistency within her trial testimony. We decline to address whether such an alleged inconsistency is sufficient to invoke the incredible dubiosity rule, and instead address only the merits of Johnson's incredible dubiosity argument.

these during which Theresa described herself as "disoriented," and panicked to the point she was "shaking and convulsing." Tr. pp. 118.

[11] Furthermore, there was substantial circumstantial evidence of Johnson's guilt: (1) Theresa had cuts and abrasions which indicated that she had been attacked, (2) police found a silver box cutter behind Johnson's bedroom dresser which corroborated Theresa's account of the attack, (3) officers read text messages sent to Theresa from Johnson which revealed that Johnson was very upset and threatening suicide, and (4) the legs of a glass table in Theresa's apartment had been bent, corroborating Theresa's account of the attack. Application of the rule is limited to cases where there is a complete lack of circumstantial evidence of the appellant's guilt. *Tillman*, 642 N.E.2d at 223. The incredible dubiosity rule is inapplicable here and, as such, there was sufficient evidence supporting Johnson's battery conviction.

[12] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.