## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 25 2017, 8:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery L. Taylor, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 25, 2017 <br><br> Court of Appeals Case No. <br> 84A04-1609-CR-2254 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable John T. Roach, Judge <br><br> Trial Court Cause No. <br> 84D01-1509-F3-2179 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Jeffrey Taylor was convicted of battery by means of a deadly weapon, a Level 5 felony. On appeal, Taylor raises the sole issue of whether there was sufficient evidence to support his conviction. Concluding the State presented sufficient evidence, we affirm Taylor's conviction.

# Facts and Procedural History

[2] The facts most favorable to the verdict reveal that on September 5, 2015, Taylor and his girlfriend, Aurora Garcia, began drinking malt liquor around 12:00 p.m. After drinking all day, Taylor became angry and verbally abusive during an argument that evening. Taylor then grabbed a knife and tried to stab Garcia, but she blocked his attempt with her left wrist. The knife left a gash in Garcia's left wrist and she was "bleeding all over the place." Transcript, Volume 1 at 8. Garcia wanted to call an ambulance, but Taylor had taken her phone and would not let her leave or call for help. Garcia attempted to stop the bleeding with toilet paper and a rag, but was unsuccessful. Taylor then told Garcia they were going to bed; she waited for him to fall asleep and ran to her neighbor's house to call the police. When law enforcement arrived, Garcia told them Taylor stabbed her.

[3] The State charged Taylor with criminal confinement, a Level 3 felony; battery by means of a deadly weapon, a Level 5 felony; and domestic battery, a Class A misdemeanor. At trial and on cross-examination, Taylor's attorney elicited

testimony from Garcia concerning her physical and mental health. Garcia testified she has been diagnosed with schizophrenia, autism, bipolar disorder, and that she often has trouble remembering things. While at the hospital several hours after calling the police, Garcia had a blood alcohol content of 0.161. When asked why she did not tell the 911 operator she had been stabbed or request a paramedic, Garcia responded, "[y]ou have to understand I was drunk that day, I could of said something, I don't even remember what happened from that date to now. I don't even remember what I did yesterday and people want me to remember what I did eight . . . months ago." *Id.* at 22. Taylor's attorney and Garcia also engaged in colloquy that went as follows:

> [Counsel]: So what you are telling this jury is that you really don't remember everything that happened?
>
> [Garcia]: Yes I am.
>
> [Counsel]: And what you're telling the jury is, is that they can't believe that your testimony is one-hundred percent accurate, right? . . .
>
> [Garcia]: Yes.

*Id.* at 38. Taylor's attorney also asked Garcia if her recollection of the events was mistaken, and Garcia responded, "[No,] I had been stabbed." *Id.* at 22. In addition, Taylor's attorney asked Garcia why she lied to the police, telling them Taylor arrived at her house around 11:00 p.m. Garcia responded that her housing situation does not permit others to live with her, so she told the police Taylor was just visiting.

[4] A jury found Taylor guilty of battery by means of a deadly weapon, a Level 5 felony, and the trial court sentenced Taylor to five years in the Indiana Department of Correction. Taylor now appeals. Additional facts will be added as necessary.

# Discussion and Decision

## I. Standard of Review

[5] In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005). It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* at 906.

## II. Incredible Dubiosity

[6] Taylor's sole contention on appeal is that Garcia's testimony was incredibly dubious and, as such, there is insufficient evidence to support his conviction. Our supreme court has explained the incredible dubiosity rule as follows:

> Appellate courts may impinge upon a jury's function to judge the credibility of a witness . . . by applying the "incredible dubiosity" rule. Application of the incredible dubiosity rule is limited to cases with very specific circumstances because we are extremely

> hesitant to invade the province of the jury. . . . [T]o warrant application of the incredible dubiosity rule, there must be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence.

*Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015) (citations and some internal quotations omitted). Although not impossible, the "incredible dubiosity" test is a difficult standard to meet and requires great ambiguity and inconsistency in the evidence. *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). "The testimony must be so convoluted and/or contrary to human experience that no reasonable person could believe it." *Id.* (citation omitted).

[7] The incredible dubiosity rule does not apply to Garcia's testimony because her testimony was not so convoluted or contrary to human experience such that no reasonable person could believe it. Garcia's testimony was not inherently contradictory, as she never wavered in her claim Taylor stabbed her. *Cf. Gaddis v. State*, 253 Ind. 73, 80, 251 N.E.2d 658, 661-62 (1969) (holding "[w]here the state's chief prosecuting witness, by his own admission is unsure as to the identity of the criminal, and where other evidence or lack thereof would support such uncertainty . . . such identification, as a matter of law, is insufficient evidence"). When the police arrived on the evening of September 5, 2015, Garcia told them Taylor stabbed her, and her allegation remained the same all the way through trial. As to why she was untruthful with the police regarding when Taylor arrived to her apartment, Garcia explained her concerns about being evicted if her landlord discovered Taylor had been living with her.

Moreover, we cannot say Garcia's mental health diagnoses and level of intoxication make her testimony incredibly dubious. Garcia openly discussed her numerous diagnoses and acknowledged her high blood alcohol content and struggles to remember all the details of the evening. The potential uncertainty of Garcia's testimony "was put squarely before the jury, [and] the jury had the ability to perform its role as a trier of fact and determine the extent to which it affected the integrity of [her] testimony." *Edwards v. State*, 753 N.E.2d 618, 623 (Ind. 2001). Therefore, we cannot conclude Garcia's testimony was incredibly dubious.

# Conclusion

The State presented sufficient evidence to support Taylor's conviction. Accordingly, we affirm.

Affirmed.

Vaidik, C.J., and Bailey, J., concur.