## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2018, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Larry D. Newkirk,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

May 16, 2018

Court of Appeals Case No.
15A01-1709-CR-2062

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1704-F6-101

**May, Judge.**

[1] Larry D. Newkirk appeals his convictions of Level 6 felony domestic battery perpetrated in the presence of a child under sixteen years of age[1] and Class A misdemeanor interference with reporting a crime.[2] Newkirk argues the evidence was insufficient because the only testifying witness provided incredibly dubious testimony. We affirm.

## Facts and Procedural History

[2] In April 2017, thirty-three-year-old Newkirk lived with Jessica Willoughby and their eight-month-old daughter. On April 4, 2017, Willoughby told Newkirk he had to move out. An argument ensued in which Newkirk pulled Willoughby's hair and grabbed her jaw. Willoughby was holding their daughter throughout the argument, and the baby was crying "because of [Newkirk] being so loud." (Tr. Vol. 1 at 43.) Willoughby threatened to call the police, and Newkirk took her phone. Willoughby attempted to leave the apartment, but Newkirk would not allow her to go. Eventually, Newkirk left. Willoughby found her phone behind the door and called the police.

[3] Aurora Police Department Officer Lorraine Oguz answered the dispatch and interviewed Willoughby. No marks were apparent on Willoughby. Officer Oguz located Newkirk later that evening and interviewed him at the police

---

[1] Ind. Code § 35-42-2-1.3 (2016).

[2] Ind. Code § 35-45-2-5 (2002).

station. Newkirk acknowledged the argument and his taking of Willoughby's phone, but he denied touching Willoughby. Officer Oguz arrested Newkirk. The State charged Newkirk with Level 6 felony domestic battery and Class A misdemeanor interference with reporting a crime. After a bench trial, Newkirk was found guilty as charged.

## Discussion and Decision

[4]    When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 2007), *reh'g denied.* The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

[5]    Newkirk contends the State failed to present sufficient evidence to support his convictions of domestic battery and interference with reporting of a crime. To prove Newkirk committed Level 6 felony domestic battery against Willoughby in the presence of a minor under age sixteen, the State was required to show

Newkirk, who is "at least eighteen (18) years of age," touched Willoughby, a "household member[,] in a rude, insolent, or angry manner . . . in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-2-1.3(a)(1) & (b)(2). To prove Newkirk committed interference with reporting a crime, the State was required to show Newkirk interfered with Willoughby "using a 911 emergency telephone system." Ind. Code § 35-45-2-5(1).

[6] The State presented evidence that Newkirk, age thirty-three, had pulled Willoughby's hair and grabbed her jaw, causing her pain. The two lived together. Thereafter, when Willoughby said she was going to call the police, Newkirk took her phone, and Willoughby was not able to retrieve her phone until he left. At the time of the incident, the couple's child was eight months old and was in Willoughby's arms. The baby was "screaming because of [Newkirk] being so loud." (Tr. Vol. 1 at 43.)

[7] While Newkirk agrees with everything else Willoughby said, he takes issue with Willoughby's statements that he pulled her hair and grabbed her chin. He notes no marks were found on Willoughby and her version of events were unsubstantiated by anyone else. Newkirk contends that, because Willoughby was the sole testifying witness and her version of events does not agree with his version of events, her version was "inherently dubious and wholly incredible." (Appellant's Br. at 10.)

[8]     The incredible dubiosity rule allows the appellate court to impinge on the fact-finder's assessment of witness credibility when the testimony at trial was "so contradictory that the verdict reached would be inherently improbable." *Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). "For the incredible dubiosity rule to apply, the evidence presented must be so unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Id*. "Incredibly dubious or inherently improbable testimony is that which runs counter to human experience, and which no reasonable person could believe." *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). This is a high standard to meet. There must be: (1) a sole testifying witness; (2) whose testimony is inherently contradictory, equivocal, or the result of coercion; and (3) a complete absence of circumstantial evidence. *Moore*, 27 N.E.3d at 756.

[9]     The incredible dubiosity rule does not apply here. Although Willoughby was the sole eyewitness to testify, nothing about Willoughby's testimony was inherently dubious or wholly incredible.[3] From the time she reported the crime through the trial,[4] Willoughby consistently stated the same facts: 1) she

---

[3] Newkirk cites *Gaddis v. State*, 251 N.E.2d 658 (Ind. 1969), to support his claim Willoughby's testimony was incredibly dubious. The witness in *Gaddis* was threatened with prison if he did not testify against Gaddis and he based his identification of Gaddis on that threat. *Gaddis*, 251 N.E.2d at 660. Our Indiana Supreme Court held such testimony to be incredibly dubious and insufficient to support a conviction because it was coerced. *Id*. at 662. Here, as there was no suggestion that Willoughby was threatened or coerced to testify, *Gaddis* is inapposite.

[4] Even if Willoughby's story had changed between her report to the police and when she testified at trial, that would not support a claim of incredible dubiosity. To be incredibly dubious, Willoughby's testimony at trial would need to be inherently contradictory. *See Holeton v. State*, 853 N.E.2d 539, 541-42 (Ind. Ct. App. 2006)

requested Newkirk leave; 2) an argument ensued; 3) Newkirk pulled her hair and grabbed her jaw; 4) she said she was going to call the police; 5) Newkirk took her phone; 6) Newkirk blocked the exit of the apartment; 7) Newkirk left; 8) Willoughby found her phone. Nothing about Willoughby's testimony was "counter to human experience," *Campbell*, 732 N.E.2d at 207, and her testimony provided evidence of all elements required for Newkirk's convictions.

[10] Newkirk's assertions are merely a request for us to reweigh the evidence and assess the credibility of the witness, which our Indiana Supreme Court recently reiterated misapprehends "our limited role as a reviewing court." *McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). We have consistently held the "uncorroborated testimony of a victim alone is sufficient to convict." *Mayo v. State,* 681 N.E.2d 689, 692 (Ind. 1997). Although Newkirk's statements to the police were entered as evidence, it was the province of the fact-finder to assess credibility and weigh Newkirk's statements against Willoughby's testimony, and we will not impinge on that power. *See Carter v. State*, 44 N.E.3d 47, 54 (Ind. Ct. App. 2015) (when testimony is neither so incredible nor improbable that a reasonable person could not believe it, "we will not impinge on the fact-finder's responsibility to judge witness credibility").

# Conclusion

---

("discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony 'incredibly dubious'").

[11]     As the State presented sufficient evidence to support the convictions herein and Willoughby's testimony was not incredibly dubious, we affirm.

[12]     Affirmed.

Riley, J., and Mathias, J., concur.