# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2020, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Keenan Allan Arnold,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

November 20, 2020

Court of Appeals Case No.
20A-CR-97

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1901-F2-83

**Mathias, Judge.**

[1] A jury found Keenan Arnold guilty of Level 2 felony burglary and Level 3 felony robbery, and the court imposed an aggregate twenty-year sentence. On appeal, Keenan[1] asserts that: (1) insufficient evidence supports his convictions under the incredible-dubiosity rule; and (2) his sentence is inappropriate in light of the nature of the offense and his character.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of March 7, 2018, Jabar Wilson was inside the home he shared with his wife Neka and the family's three children. Neka was at nearby casino that night, but the children were at home. Around 7:15 p.m., the Wilson's video-surveillance system captured three men in hooded sweatshirts walking up the driveway toward the home's side door. Jabar —who was washing dishes at the time—heard a knock and asked, "Who is it?" Tr. Vol. 3, p. 82. A man responded, "Dontu." *Id.* at 83. Because Dontu was the name of a family friend, Jabar opened the door. When he did, a man entered the home brandishing a firearm. As Jabar started backing up, two other men with guns followed the initial intruder inside. *Id.* at 84. Jabar's primary concern at that point was to get out of the house "because all those kids [were] in there." *Id.* at 92. Though he was injured in the process, Jabar was able to evade the three men and run to his

---

[1] We refer to the defendant and others by their first names because several people involved in this case share surnames.

neighbor's home. There, Jabar told his neighbor that someone was "trying to rob him," and she called the police. Tr. Vol. 2, p. 211.

[4]  Meanwhile, inside the Wilson home, the initial intruder stood by the side door while the other two men moved from room to room. Twelve-year-old J.W., who was in her basement-level bedroom at the time, heard a commotion upstairs. When she looked up the stairs, she saw two men she did not recognize walk past: "a dark-skinny guy in dreads" and a "light-skinned guy with a beard." Tr. Vol. 3, p. 143. On the home's main level, nine-year-old D.W. "didn't know what was happening" when a man "with dreads" kicked open his bedroom door and pointed a gun at him. *Id.* at 151–52, 156. The man did not enter D.W.'s room; he instead went into Jabar and Neka's room where he opened drawers and lifted up the bed like he was "looking for something." *Id.* at 152.[2] The three men then fled the house with Jabar's wallet and several hundred dollars in cash. They were gone by the time police arrived.

[5]  About a week later, Detective Melissa Sopher interviewed members of the Wilson family about the robbery. Jabar described the three suspects: the first "was a lighter skinned black male" carrying a gun, who he believed was Cary Arnold Jr.; the second "was a dark[-]skinned black male with [dreadlocks]"; and the third was a black male with "a thick beard." Conf. App. Vol. 2, p. 25. Jabar then told the detective that, after looking at pictures on Facebook, he

---

[2] The family's other child, fourteen-year-old J.F., was taking a shower at the time of the robbery.

believed the second suspect was Cary's older half-brother Keenan. *Id.* at 26. And Neka told the detective that, after reviewing the video-surveillance footage, she believed "the suspect with the beard" was LaShawn Manns. *Id.*

[6] The detective showed Jabar three separate photo lineups that included pictures of the men. Jabar pointed to Keenan's picture "and said that his eyes looked familiar," but he "would not confirm that 100 percent it was the suspect." Tr. Vol. 3, p. 186. Jabar similarly picked out Manns's picture because "he recognized the beard," but "he could not be positive" that Manns was one of the robbers. Conf. App. Vol. 2, p. 26. Jabar did however positively identify Cary as "the suspect who entered his house first." *Id.* at 27. At that point, the detective tried to locate Cary.

[7] A few months later, in August, law enforcement found and arrested Cary, and Detective Sopher interviewed him about the Wilson home burglary. Cary denied any involvement and said that he was out of state at the time. But in December, Cary requested a second interview during which his story changed. In that interview, Cary admitted involvement and said that he carried out the crime with Keenan and Manns. The two men were subsequently arrested, and the State charged each with one count of Level 2 felony burglary and one count of Level 3 felony robbery.

[8] In October 2019, over a four-day period, the State jointly tried Keenan and Manns in front of a jury. The State called several witnesses, including members of the Wilson family, law enforcement, and Cary. The defense called three

inmates who had been incarcerated with Cary prior to trial. Each inmate described conversations with Cary that tended to show neither Keenan nor Manns was involved with the robbery; Cary denied having these conversations. The jury ultimately found both men guilty as a charged.

The court subsequently imposed on Keenan an aggregate sentence of twenty-years, to be fully executed: concurrent terms of twenty years for the Level 2 felony burglary and ten years for the Level 3 felony robbery. Keenan now appeals.[3]

## Discussion and Decision

Keenan raises two issues on appeal. He first challenges the sufficiency of the evidence supporting his convictions, arguing that his presence at the crime scene is based only on the incredibly dubious testimony of his half-brother Cary. He also asserts that his twenty-year sentence is inappropriate in light of the nature of the offense and his character. We disagree with each contention and explain why below.

### I. The incredible-dubiosity rule does not apply and sufficient evidence supports Keenan's convictions.

Keenan challenges the sufficiency of the evidence supporting his convictions, arguing that he was convicted "solely based upon" Cary's testimony, which he

---

[3] Though Kennan and Manns were tried together, their cases were not consolidated on appeal. A panel of this Court recently issued an opinion in Manns's appeal, *Manns v. State*, No. 20A-CR-105, 2020 WL 6479603 (Ind. Ct. App. Nov. 4, 2020), but that opinion has no effect on our decision today.

asserts "was dubious." Appellant's Br. at 10–11. Keenan is raising a particular sufficiency claim that is premised on application of the incredible-dubiosity rule.

[12] The incredible-dubiosity rule is an exception to well-settled law mandating that we will not judge witness credibility on appeal. *See, e.g., Jacobs v. State*, 148 N.E.3d 1175, 1178 (Ind. Ct. App. 2020). The rule is limited to cases with the following three conditions: (1) the defendant's conviction is based on the testimony of a single witness; (2) that witness's testimony is inherently contradictory, equivocal, or the result of coercion; and (3) there is a complete lack of circumstantial evidence. *Smith v. State*, 34 N.E.3d 1211, 1221–22 (Ind. 2015) (citing *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015)). If all three conditions are satisfied, reversal is warranted because the evidence is insufficient, as a matter of law, to establish guilt beyond a reasonable doubt. *Moore*, 27 N.E.3d at 755 (citing *Gaddis v. State*, 253 Ind. 73, 80–81, 251 N.E.2d 658, 661–62 (1969)). But making this showing is no easy task—while application of the incredible-dubiosity rule is "not impossible," it is "a rare occasion." *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001).

[13] This case is not one of those rare occasions because Keenan has failed to show that the rule's second and third conditions are satisfied: Cary's trial testimony was not internally contradictory; and there was circumstantial evidence of Keenan's guilt. We address each in turn.

[14] The incredible-dubiosity rule is only applicable when the sole witness's trial testimony is "inconsistent within itself." *Smith*, 34 N.E.3d at 1221 (citing *Moore, 27 N.E.3d at 758–59*). And here, Cary's trial testimony was not inconsistent: he unequivocally identified Keenan, on multiple occasions, as one of the robbers; he never changed his story; and he did not contradict himself on the witness stand. Keenan acknowledges Cary's consistent trial testimony but points to his inconsistent pretrial statements, his "motivation to frame other people," and his alleged exculpatory comments to prison inmates. Appellant's Br. at 11–12. Yet, none of these circumstances satisfy the rule's second condition.

[15] It is true that Cary's trial testimony varied in some respects with pretrial statements, but those discrepancies do not render the trial testimony incredibly dubious. *See Murray v. State*, 761 N.E 2d 406, 409 (Ind. 2002). The jury was made aware of the inconsistences, Tr. Vol. 3, pp. 26–37, and it was up to them to weigh that evidence against Cary's uncontradictory trial testimony, *see Smith, 34 N.E.3d at 1222*. It is also true that Keenan presented evidence showing Cary's "motivation to frame" others, and testimony from two inmates that tended to support Keenan's innocence. But again, this evidence was all presented at trial. Cary was thoroughly questioned on what he hoped to gain in exchange for his testimony. Tr. Vol. 3, pp. 38–41, 44, 63–68. And the jury heard each inmate detail alleged jailhouse conversations with Cary, *id.* at 246–48; Vol. 4, pp. 14–16, as well as Cary's response that those conversations never happened, Tr. Vol. 3, pp. 46, 49, 61–63; Vol. 4, pp. 86–87. It was for the jury to evaluate this evidence and determine who to believe. *See Moore, 27 N.E.3d at*

759; *Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind. 2001). In short, Keenan has failed to show that Cary's trial testimony was so "inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). And thus, for this reason alone, the incredible-dubiosity rule does not apply. But it is also inapplicable for a second reason.

[16] When there is circumstantial evidence of a defendant's guilt, "reliance on the incredible dubiosity rule is misplaced." *Majors v. State*, 748 N.E.2d 365, 367 (Ind. 2001); *see also Smith*, 34 N.E.3d at 1221 (recognizing that there does not need to be circumstantial evidence to "independently establish guilt" to render the rule inapplicable). And here, there is circumstantial evidence of Keenan's guilt.

[17] Cary's identification of Keenan was corroborated by both video surveillance and physical descriptions from the Wilson family. At trial, Cary was shown a still photograph from video-surveillance footage taken just before the robbery that showed three men walking up the Wilson's driveway. Ex. Vol. at 10; Tr. Vol. 3, pp. 10–11. When Cary was asked, "Who's the second person?", he responded, "That's Keenan." Tr. Vol. 3, p. 13. In addition, members of the Wilson family provided a physical description of one of the intruders that was consistent with Keenan's appearance. J.W. described one of the men as a "dark-skinny guy in dreads," *id.* at 143, and D.W. similarly recalled "[s]omebody with dreads" kicking open his bedroom door, *id.* at 151–52. Though Jabar did not recall a man with dreadlocks, he described a "tall guy" with a "darker . . . complexion." *Id.* at 102. Consistent with these descriptions,

the evidence at trial revealed the following about Keenan's appearance: he had dreadlocks around the time of the crime, Ex. Vol. at 18, 20; his skin is darker in complexion then Cary or Manns, *id.* at 14, 18; Tr. Vol. 4, pp. 63–64, 116–17; and he is the tallest of the three men, Ex. Vol. at 14, 16; Tr. Vol. 4, pp. 63, 98. Because there is evidence corroborating Cary's identification of Keenan as one of the men involved in the robbery, this is not a case with a "complete absence of circumstantial evidence." *Moore*, 27 N.E.3d at 756.

[18] In sum, for two independent reasons the incredible-dubiosity rule does not apply, and Cary's testimony—supported by other evidence—is sufficient to sustain Keenan's convictions.

## II. *Keenan has failed to show that his sentence is inappropriate.*

[19] Keenan also argues that his aggregate twenty-year sentence is inappropriate under Indiana Appellate Rule 7(B), which allows us to revise a sentence that is "inappropriate in light of the nature of the offense and the character of the offender." Determining whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In making this determination, we generally defer to the trial court's judgment: Rule 7(B) requires us to give "due consideration" to that judgment, and we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Merriweather v. State*, 128 N.E.3d 503, 517 (Ind. Ct. App. 2019), *trans. denied.*

[20] Our role when reviewing a sentence under Rule 7(B) is "not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Instead, we attempt to "leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes." *Id.* We accomplish these goals by focusing "on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Ultimately, it is the defendant's burden to persuade us that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[21] Before explaining why Keenan has failed to persuade us this that his aggregate twenty-year sentence is inappropriate, we first note that his sentence is far less than what he could have received. Keenan was convicted of Level 2 felony burglary and Level 3 felony robbery. The former carries a sentencing range of ten to thirty years with an advisory sentence of seventeen-and-one-half years, Ind. Code § 35-50-2-4.5; the latter carries a sentencing range of three to sixteen years with an advisory sentence of nine years, I.C. § 35-50-2-5. And because each conviction is for a "crime of violence," the court could have ordered the sentences served consecutively. I.C. § 35-50-1-2 (13), (14). Thus, Keenan faced a possible forty-six-year sentence, but he received less than half that: the court imposed consecutive sentences of twenty years for the Level 2 felony—three years above the advisory—and ten years for the Level 3 felony—one year above the advisory. And Keenan has failed to show that this aggregate twenty-year sentence is inappropriate in light of the nature of the offense and his character.

[22]　To the nature of the offense, Keenan asserts that "there is nothing aggravating about the crime itself." Appellant's Br. at 18. We cannot agree. When looking at the offense, we do not turn a blind eye to "facts of the incident that brought the defendant before" us or the "nature and circumstances of the crime as well as the manner in which the crime is committed." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013). Those facts and circumstances here reveal the following: Keenan broke into a family home where three children were present; he was armed; the homeowner was injured while attempting to flee and get help; and Keenan kicked open then-nine-year-old D.W.'s bedroom door, pointed a BB gun at the child, and stated, "pow pow." Conf. App. Vol. 2, p. 26. The nature of this crime and the manner in which it was committed does not warrant a reduction in Keenan's sentence. *See McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020).

[23]　Turning to the character of the offender, Keenan directs us only to his criminal history, noting that "as an adult there are no crimes of violence" and that prior to this arrest he had "nothing greater" than a Class D or Level 6 felony. Appellant's Br. at 18. Though this is true, we find Keenan's attempt to minimize his criminal history unavailing. And, after reviewing that history, we find no support for Keenan's assertion that a "short term of incarceration with a lengthy term of probation would be an adequate deterrent." *Id.*

[24]　Keenan's fifteen-plus-year criminal record reveals a concerning pattern of illegal behavior despite multiple chances for deterrence and rehabilitation. As a juvenile, Keenan received three referrals for delinquent behavior. Conf. App. Vol. 3, pp. 28–29. He was placed on probation and home detention; he was

ordered to complete community service; and he served time in nonsecure detention. *Id.* Yet, none of these consequences deterred Keenan. He was twice released unsatisfactorily from probation for committing a new offense, and his disregard for the law continued into adulthood. *Id.* Indeed, over an eight-year period, Keenan was arrested five times, charged with five misdemeanors and four felonies, and convicted of two felonies and one misdemeanor. *Id.* at 29–30. Aside from incarceration, Keenan served time on both work release and electronic monitoring; he was ordered to complete community service; and he had time suspended to probation. But again, none of these consequences or alternative placements deterred Keenan from crime. In fact, he was on probation when he committed the current offense—one that represents an increase in severity from his previous behavior, *see McFarland v. State*, 153 N.E.3d 369, 374 (Ind. Ct. App. 2020), *trans denied.* Keenan's character—as reflected by his extensive criminal history and failed attempts at rehabilitation—does not warrant a reduction in his sentence.

## Conclusion

[25] The incredible-dubiosity rule is not applicable here, and the evidence produced at trial is sufficient to sustain Keenan's convictions. Further, Keenan has failed to show that his aggregate twenty-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

[26] Affirmed.

Bradford, C.J., and Najam, J., concur.